IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOEL MILLER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALISA ADLER, et al.,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>17-7149 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

A. William Henkel, Esq.
Jeffrey Morrow Pollock, Esq.
FOX ROTHSCHILD LLP
Princeton Pike Corporate Center
997 Lenox Drive
Building 3
Lawrenceville, NJ 08648
    Attorneys for Plaintiffs

Edwin R. Matthews, Esq.[1]
BOURNE NOLL & KENYON
328 Springfield Avenue, STE 507
P.O. Box 690
Summit, NJ 07901
    Attorney for Defendant Daniel Hirsch

**SIMANDLE, District Judge:**

**I.    INTRODUCTION**

This action concerns a loan transaction that resulted in the loss of $150,000 from Plaintiffs Joel Miller and Stephanie

---

[1] Attorney Matthews has withdrawn from the case after Magistrate Judge Karen M. Williams granted his Motion to Withdraw as Attorney on February 2, 2018. [Docket Item 17.]

1

Segal Miller. The Millers' claims arise from misrepresentations made by Defendants Alisa Adler and Daniel Hirsch when the Millers contracted to loan the Defendants money for a real estate project. The case comes before the Court on a motion brought by Mr. Hirsch, a Georgia resident, to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). [Docket Item 4.] The primary issue in this case concerns whether Mr. Hirsch had sufficient contacts with New Jersey concerning the transaction in question so that specific jurisdiction exists consistent with due process. In addressing this issue, the Court will apply both the traditional "minimum contacts" test for specific jurisdiction as to all claims, which is enhanced by the "Calder effects test" (Calder v. Jones, 465 U.S. 783 (1984) and its progeny) applicable to the intentional torts alleged in the Complaint. For the following reasons, the Court denies Mr. Hirsch's motion and finds that he is subject to specific jurisdiction.

## II. BACKGROUND

On March 25, 2015, Plaintiffs Joel Miller and Stephanie Segal Miller of New Jersey contracted with Defendants Alisa Adler and Daniel Hirsch, who allegedly "induced" the Millers to loan them $150,000 for a Georgia real estate project.[2] [Docket

---

[2] The Millers previously loaned $50,000 to Ms. Adler for a New York real estate project that is also contested. [Docket Item 1

2

Item 1, Complaint, at Preliminary Statement ¶ B.] Although only Ms. Adler met with the Millers in New Jersey when they signed the contract, the Millers aver that Ms. Adler informed them that she was also acting on Mr. Hirsch's behalf. [Docket Item 7, Reply Affidavit of Joel Miller, ¶ 3.] Mr. Hirsch also signed this contract a day later. [Compl. Ex. E.]

Mr. Hirsch, a Georgia resident, asserts that he did not have actual contact with the Millers in New Jersey and that his only physical contact with the state occurred several years prior during a stopover at Newark Airport. [Compl. ¶ 10; Docket Item 4, Affidavit of Daniel Hirsch, ("Hirsch Affid.") ¶ 4.] His alleged sole meeting with the Millers occurred when they visited Georgia to examine properties in which Ms. Adler suggested they invest. [Hirsch Affid. at ¶¶ 8-9.] However, emails that Mr. Hirsch sent to the Millers in March and May 2016 respectively indicate that he called the Millers in New Jersey about this subject transaction at least once and that he continued to involve them in the alleged development of the real estate project. [Compl. at ¶¶ 6-8; Pl. Br., Docket Item 7, Exs. A & B.]

The Millers also wrote their check for the project's loan to Defendant Brunswick, an alleged shell corporation owned by

---

¶ 24.] Because the complaint does not implicate Mr. Hirsch in this allegedly fraudulent New York enterprise, it is not addressed with regard to Mr. Hirsch's motion to dismiss.

both Ms. Adler and Mr. Hirsch that was incorporated the day after the contract was signed and has since been dissolved. [Docket Item 1 ¶¶ 12 & 25.] This check then cleared through the Millers' New Jersey bank. Id. at ¶¶ 22 & 25, Ex. F. However, Ms. Adler and Mr. Hirsch allegedly never used the loan money for the real estate project. Id. at ¶ 25. Upon this realization, the Millers demanded repayment as Mr. Hirsch and Ms. Adler promised. Id. at ¶¶ 3 & 25. However, only a cancelled check was returned to their New Jersey bank. [Docket Item 7, Reply Affidavit of Joel Miller, ¶ 4.] The Millers now allege that Mr. Hirsch and Ms. Adler retained the funds in order to spend the $150,000 loan for their personal uses. [Compl. ¶ 26.]

The Millers filed suit in the District of New Jersey against Ms. Adler, Mr. Hirsch, Brunswick, and Ms. Adler's corporation, ASG Real Estate Group, claiming: 1) breach of contract; 2) unjust enrichment; 3) fraud; and 4) civil conspiracy for fraudulent inducement. Id. at ¶¶ 30, 35, 39, 47. However, Mr. Hirsch has moved pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the suit because he claims that the Court does not have in personam jurisdiction over him. [Docket Item 4.][3]

---

[3] Mr. Hirsch's attorney withdrew from representation on February 2, 2018 [Docket Item 17]. The sixty days provided for Mr. Hirsch to find new counsel or enter his appearance pro se have since elapsed with him effecting neither.

4

## III. STANDARD OF REVIEW

To defeat a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). The plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Turner v. Boyle, Civil Action No. 12-7224, 2013 U.S. Dist. LEXIS 49977 at *17 n. 1 (D.N.J. Apr. 8, 2013) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61 (3d Cir. 1984)). Courts may rely on matters outside the pleadings to determine jurisdictional facts. Turner, 2013 LEXIS 49977 at *17 n. 1 (citing Time Share Vacation Club, 735 F.2d at 67 n.9).

Where, as here, no evidentiary hearing was sought or held on the jurisdictional issue, "the plaintiff[s] need only establish a prima facie case of personal jurisdiction and the plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (quoting Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)). A plaintiff "may meet this burden by establishing

5

that the court has either 'general' or 'specific' jurisdiction." Provident Nat'l Bank, 819 F.2d at 437.

Here, general jurisdiction is not considered because specific jurisdiction can be asserted over Mr. Hirsch.

## IV. DISCUSSION

### A. Specific Jurisdiction and the Calder Effects Test

The personal jurisdiction inquiry traditionally requires examining whether its exercise over a defendant is permissible under both the state's long-arm statute and the Due Process Clause of the Constitution. However, because New Jersey's personal jurisdiction statute permits the exercise of jurisdiction to the fullest limits of due process, the two jurisdictional inquiries in this case collapse into one: whether the exercise of jurisdiction comports with due process. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981).

The Due Process Clause of the Constitution permits the exercise of personal jurisdiction when there are sufficient "minimum contacts" between a non-resident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316

(1945)). A court may exercise specific jurisdiction over a defendant as long as it is consistent with this principle.

A court may assert specific jurisdiction over a defendant if the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). The inquiry becomes whether the defendant "purposefully directed" his activities at residents in the forum, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985), or whether there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319.)

The Third Circuit has established that the Court can assert specific jurisdiction over a defendant upon finding that: 1) the defendant "purposefully directed [its] activities at the forum" (internal quotation marks omitted) (footnote omitted); 2) the litigation "arise[s] out of or relate[s] to at least one of those activities" (internal quotation marks omitted); and 3) the exercise of jurisdiction "otherwise comport[s] with fair play and substantial justice." O'Connor, 496 F.3d at 317 (internal quotation marks omitted). A slightly different test applies for intentional torts.

7

The <u>Calder</u> effects test, which stems from <u>Calder v. Jones</u>, 465 U.S. 783 (1984), applies when an intentional tort is alleged. <u>O'Connor</u>, 496 F.3d at 317 n.2. Under the effects test, "a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state." <u>Carteret Sav. Bank, FA v. Shushan</u>, 954 F.2d 141, 148 (3d Cir. 1992). Applying the three prongs of the <u>Calder</u> "effects test": 1) the defendant must have committed an intentional tort; 2) the plaintiff must have felt the brunt of the harm caused by the tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and 3) the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of tortious activity. <u>IMO Indus.</u>, 155 F.3d at 265. The Millers' claims of fraud and civil conspiracy, as intentional torts, are subject to the <u>Calder</u> effects test. However, because the <u>Calder</u> effects test is simply used "to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied," <u>id.</u> at 260 (citing <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 780 (1984)), the traditional specific jurisdiction test may be used to find jurisdiction over a defendant for both intentional tort claims as well as those that are not intentional torts. The Millers'

8

claims of breach of contract and unjust enrichment, which are not intentional torts, are subject to the traditional specific jurisdiction test, rather than the Calder effects test; however, the Court's finding of specific personal jurisdiction under the traditional test extends also to the intentional tort claims arising out of the transaction.

**B. Specific Jurisdiction over Defendant Hirsch**

According to the Complaint, Mr. Hirsch "induced" the Millers to contract with him and Ms. Adler. Because factual disputes are drawn in favor of the moving party, the Court infers from this language that Mr. Hirsch actively solicited the Millers in New Jersey for the $150,000 loan. Active solicitation of a forum's resident by a nonresident defendant constitutes purposeful availment of the forum for the purposes of finding specific jurisdiction. Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001). Although Mr. Hirsch contends that he was not physically present in New Jersey at any point during the transaction with the Millers, "physical presence in the forum is not a prerequisite to jurisdiction[.] [P]hysical entry into the State — either by the defendant in person or through an agent, goods, mail, or some other means" suffices for purposeful availment. Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (citation omitted) (citing Burger King, 471 U.S. at 476).

9

Here, Mr. Hirsch purposely sent emails and made at least one telephone call to the Millers in New Jersey with regard to the real estate project. The Court infers that Mr. Hirsch knew that he was purposefully availing himself of New Jersey because he was seeking funding in New Jersey and because the loan money came from the Millers' in-state bank. Further, emails, telephone calls, and letters are "informational communications" that weigh in favor of purposeful availment when the nonresident defendant solicits the forum's resident. Remick, 238 F.3d at 256 (citing Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993)). Because Mr. Hirsch knowingly solicited the Millers in New Jersey, his emails and telephone call indicate that he purposefully availed himself of the forum. See O'Connor, 496 F.3d at 318 (finding purposeful availment when a resort solicited a Pennsylvania couple via a telephone call and a brochure sent to their home); see also Fox v. Dream Trust, 743 F. Supp. 2d 389, 395 (D.N.J. 2010) (finding purposeful availment when a nonresident defendant solicited a forum's resident through telephone call and email); cf. Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods., Co., 75 F.3d 147, 152 (3d Cir. 1996) (finding no purposeful availment by the nonresident defendant because the forum's resident was the solicitor, despite the defendant later sending letters into and calling the resident in the forum).

Additionally, although the Court cannot assert jurisdiction over Mr. Hirsch by reason of his alleged conspiracy with Ms. Adler,[4] the Court infers that Ms. Adler represented Mr. Hirsch because she allegedly told the Millers that she was also acting on his behalf. Because a principal can purposefully avail himself of a forum through the actions of his agent, Mr. Hirsch further purposefully availed himself of New Jersey through Ms. Adler's actions as his representative. See Grand Entm't Grp., 988 F.2d at 483 (finding purposeful availment by a corporation through the forum contacts of its agents).

Furthermore, Mr. Hirsch's contract with the Millers for the project's loan constitutes purposeful availment of New Jersey. A nonresident defendant who "'reach[es] out beyond [his] state and create[s] continuing relationships and obligations with citizens of another state' [is] subject to the regulation" of this activity. Burger King, 471 U.S. at 472 (quoting Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950)). In addition to the

---

[4] Conspiracy theory of jurisdiction, under which the in-forum acts of co-conspirators can be attributed to an out-of-forum defendant under certain circumstances, is a question of state law. Lasala v. Marfin Popular Bank Pub. Co., 410 F. App'x. 474, 478 (3d Cir. 2011) (citing Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 102 n.8 (3d Cir. 2004)). Because New Jersey has never and likely will not recognize the conspiracy theory of jurisdiction, personal jurisdiction cannot be established over individual defendants on the basis of their conspiracy liability with in-forum defendants. Id. (citing Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 127 (1994)).

contract itself, Mr. Hirsch's email to the Millers about the project's development that he sent over a year after contracting with them evidences this ongoing relationship. See <u>Mellon Bank PSFS, Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992) (finding purposeful availment by nonresident defendants who solicited and contracted with a resident bank for loans).

Because the Millers' claims arose from Mr. Hirsch's contacts with New Jersey, it is proper for the Court to assert specific jurisdiction over Mr. Hirsch. Specific jurisdiction can be asserted over a nonresident whose contacts with the forum give rise to the claim. <u>O'Connor</u>, 496 F.3d at 324. Mr. Hirsch implicitly took advantage of New Jersey's laws by soliciting and entering into a contract with its residents. Since this solicitation of and contract with the Millers led to their claims against Mr. Hirsch for breach of contract and unjust compensation, Mr. Hirsch's contacts are sufficiently related to the Millers' claims to support asserting jurisdiction over him. See <u>O'Connor</u>, 496 F.3d at 323-24 (finding the residents' claim arose from the nonresident defendant's solicitation of and contract with the residents in the forum).

Moreover, under these circumstances, and because it is feasible for Mr. Hirsch to travel to New Jersey, exercising jurisdiction over him comports with "traditional notions of fair play and substantial justice." <u>Int'l Shoe</u>, 326 U.S. at 316.

Exercising specific jurisdiction over a nonresident comports with "fair play and substantial justice" if it is reasonable to require the nonresident to travel to the forum. Formula One Licensing BV v. Valentine, Civil Action No. 14-5812, 2016 U.S. Dist. LEXIS 169794 at *10, *21-22. (D.N.J. Dec. 8, 2016) (quoting Int'l Shoe, 326 U.S. at 316). Because Mr. Hirsch traveled to New Jersey in the past, albeit briefly, the Court does not violate these principles by exercising jurisdiction over him. [Hirsch Affid. ¶ 4.] Id. at *21-22 (finding jurisdiction in New Jersey proper because nonresident defendants previously traveled there); see also Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 116 (1987) (finding no jurisdiction over a Japanese manufacturer in California due to the burden of international travel). Moreover, to address a claimed substantial indebtedness as alleged in this case, it is not unreasonable to hale Mr. Hirsch into this forum to defend himself.

Considering the foregoing factors, the Millers' claims for breach of contract and unjust enrichment satisfy the three-part O'Connor test for specific jurisdiction over Mr. Hirsch. The claims for fraud and civil conspiracy arise from the same transactions and occurrences. The Court therefore has personal jurisdiction over Mr. Hirsch with regard to all four claims, arising out of the transaction at issue.

Alternatively, the Calder effects test also determines personal jurisdiction over Mr. Hirsch due to his alleged intentional torts.

**C. Personal Jurisdiction over Defendant Hirsch for Fraud and Civil Conspiracy**

The Millers, as New Jersey residents, suffered most of the harm from Mr. Hirsch's alleged intentional torts of fraud and civil conspiracy while in New Jersey. The first two prongs of the Calder effects test are thereby satisfied.

Furthermore, the Court finds that Mr. Hirsch targeted New Jersey through his actions by directly impacting the forum's economy. Although a nonresident defendant does not target a forum by simply knowing that it is where the harm he caused will occur, IMO Indus., 155 F.3d at 266, Mr. Hirsch's alleged fraudulent activities go beyond knowing that the Millers would endure the brunt of the harm in New Jersey. Mr. Hirsch purportedly sent the contract via Ms. Adler to New Jersey and refused to return the money back to New Jersey. Through these actions, Mr. Hirsch targeted New Jersey by directly impacting its economy. Targeting New Jersey as a forum rather than the Millers themselves is essential because a nonresident's actions must target the forum, not simply the resident himself. See Remick, 238 F.3d at 259 (finding no targeting of Pennsylvania because a defamatory letter only impacted the resident and not

the forum itself). Due to the economic impact on the forum created by his activities, Mr. Hirsch targeted New Jersey and consequently satisfied the targeting prong of the Calder effects test. See Flagship Interval Owner's Ass'n v. Phila. Furniture Mfg. Co., No. 09-1173, 2010 U.S. Dist. LEXIS 26472 at *24 (D.N.J. Mar. 22, 2010) (finding that a nonresident defendant targeted New Jersey when it sent its solicitation for a deposit and refused to return money to the forum). With all three prongs of the Calder test met, the Court can also assert specific jurisdiction over Mr. Hirsch for his alleged fraud and civil conspiracy against the Millers.

## V. CONCLUSION

The Motion to Dismiss for lack of personal jurisdiction is denied for the foregoing reasons and an accompanying Order will be entered. Per Fed. R. Civ. P. 12(a)(4)(A), Defendant Hirsch has fourteen (14) days to answer the Complaint.

**June 29, 2018**　　　　　　　　　　　　　　　　　　　**s/ Jerome B. Simandle**
　　　　　　　　　　　　　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge