IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOEL MILLER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALISA ADLER, et al.,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>17-7149 (JBS/KMW)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, District Judge:**

    This matter comes before the Court on the motion of Plaintiffs Joel Miller and Stephanie Segal Miller (hereinafter, collectively, "Plaintiffs") for default judgment against Defendant Alisa Adler [Docket Item 29] and Defendant Daniel Hirsch [Docket Item 33] (hereinafter, collectively, "Defendants"). On September 15, 2017, Plaintiffs filed this suit alleging four counts of breach of contract, unjust enrichment, fraud, and civil conspiracy against Defendants related to two proposed real estate transactions. (See Complaint [Docket Item 1].) Because Defendants have not answered Plaintiffs' Complaint and the time to do so has long expired, Plaintiffs now seek default judgment against Defendants under Federal Rule of Civil Procedure 55(b). For the reasons that follow, Plaintiffs' unopposed motions for default judgment will be granted in part, denied without prejudice in part, and dismissed without

prejudice in part,[1] and the Court will enter a Default Judgment in favor of Plaintiffs and against Defendant Adler in the amount of fifty-three thousand, seven hundred and sixty dollars ($53,760.00) and against Defendants Adler and Hirsch, jointly and severally, in the amount of two hundred and nineteen thousand, five hundred and thirty-four dollars ($219,534.00).

The Court finds as follows:

1. **Factual and Procedural Background.** Plaintiffs filed their Complaint [Docket Item 1] on September 15, 2017, alleging that Defendants breached their obligations to Plaintiffs with respect to two separate transactions. Plaintiffs allege that on August 26, 2014 Plaintiff Stephanie Segal Miller entered into the first transaction: a Promissory Note with Defendant Adler, under which Plaintiff Stephanie Segal Miller would loan Defendant Adler fifty-thousand dollars ($50,000.00), to be repaid within six (6) months with interest.[2] (See Complaint

---

[1] On August 29, 2018, Plaintiffs filed a letter on the docket indicating that they are not seeking default judgment with respect to Counts 3 and 4 of their Complaint by way of the present motions, but that they "reserve the right to pursue Counts 3 and 4 . . . at a later time." (Letter [Docket Item 40], Aug. 29, 2018.) As such, the Court shall dismiss the portions of the present motions relating to Counts 3 and 4 without prejudice.

[2] The Promissory Note, (see Exhibit A [Docket Item 1], 16 on the docket), was executed by Plaintiff Stephanie Segal Miller and Defendant ASG Real Estate, Inc., which Plaintiff alleges is wholly owned by Defendant Adler. (See Complaint [Docket Item 1], ¶ 13.) Additionally, Plaintiffs allege that Defendant Adler accompanied

[Docket Item 1], ¶¶ 1-2.) Plaintiffs allege that they transferred the fifty thousand dollars ($50,000.00) from an account held jointly by Plaintiffs to Defendant Adler on August 29, 2014,[3] but that Plaintiff Stephanie Segal Miller was never repaid, despite her repeated requests. (Id. at ¶¶ 2A, 4.) Plaintiffs further allege that they are owed 15% per annum interest on the loan for the duration of the loan, from August 29, 2014 to February 28, 2015. (See Declaration of Stephanie Segal Miller (hereinafter "Miller Dec.") [Docket Item 29-3], ¶ 9.) Plaintiffs calculate such interest to total three thousand, seven hundred and sixty dollars ($3,760.00).[4] (See id.) Therefore, in relation to the first loan, Plaintiffs seek total damages in the amount of fifty-three thousand, seven hundred and

---

the Promissory Note with a Personal Guaranty, permitting Plaintiff Stephanie Segal Miller to "proceed in the first instance against [Defendant Adler] to collect" on the fifty thousand dollar loan. (See Exhibit B [Docket Item 1], 18 on the docket.)

[3] Plaintiffs allege that the funds were transferred from an account held jointly by both Plaintiff Joel Miller and Plaintiff Stephanie Segal Miller. (See Complaint [Docket Item 1], ¶ 2A; Exhibit C [Docket Item 1], 20-21 on the docket.) Furthermore, Defendant Adler is not prejudiced by considering Plaintiff Joel Miller to be a creditor in relation to this transaction. Therefore, Plaintiff Joel Miller is found to be a creditor with respect to this transaction.

[4] Plaintiffs indicate that they have rounded their interest calculations to the nearest whole dollar. (See Miller Dec. [Docket Item 29-3], 5 n.1.)

3

sixty dollars ($53,760.00) from Defendant Adler. (See id. at ¶¶ 9-10.)

2. Plaintiffs further allege that on March 26, 2015 Plaintiff Stephanie Segal Miller entered into a second transaction with both Defendants: "a loan/investment for $150,000 for property in Atlanta, Georgia," of which Defendants "personally guaranteed repayment."[5] (Complaint [Docket Item 1], ¶¶ 2B-3.) Plaintiffs allege that the one hundred and fifty thousand dollars ($150,000.00) from an account held jointly by Plaintiffs to Defendants on March 26, 2015,[6] but that Plaintiff Stephanie Segal Miller was never repaid, despite her repeated requests. (Id. at ¶¶ 2B, 4.) Plaintiffs further allege that they are owed 15% per annum interest on the loan for the duration of

---

[5] Additionally, Plaintiffs allege that the limited liability company on whose behalf Defendants signed the agreement "was wholly owned and operated by Defendants ADLER and HIRSCH, jointly and severally," and that it has since been dissolved. (Complaint [Docket Item 1], ¶¶ 12-13.)

[6] Plaintiffs allege that the funds were transferred from an account held jointly by both Plaintiff Joel Miller and Plaintiff Stephanie Segal Miller. (See Complaint [Docket Item 1], ¶ 2B; Exhibit F [Docket Item 1], 33 on the docket.) Furthermore, Defendants are not prejudiced by considering Plaintiff Joel Miller to be a creditor in relation to this transaction. Therefore, Plaintiff Joel Miller is found to be a creditor with respect to this transaction.

the loan, from May 26, 2015[7] to June 27, 2018.[8] (See Miller Dec. [Docket Item 29-3], ¶ 11.) Plaintiffs calculate such interest to total sixty-nine thousand, five hundred and thirty-four dollars ($69,534.00).[9] (See id.) Therefore, in relation to the second "loan/investment," Plaintiffs seek total damages in the amount of two hundred and nineteen thousand, five hundred and thirty-four dollars ($219,534.00) from both Defendants. (See id. at ¶¶ 11-12.)

3. **Defendant Hirsch was Properly Served and is in Default.** The Complaint together with the summons were personally served upon Defendant Hirsch on September 21, 2017 at 45 W. Bluff Drive, Savannah, GA 31406. (See Proof of Service Summons [Docket Item 8].) Defendant Hirsch has never filed an answer to Plaintiffs' Complaint, and the Clerk of Court accordingly

---

[7] Plaintiffs state that they transferred these funds to Defendant Adler on March 26, 2015. (See Complaint [Docket Item 1], ¶¶ 2B, 4.) However, Plaintiffs only seek interest beginning on May 26, 2015, (see Miller Dec. [Docket Item 29-3], ¶ 11), therefore the Court shall only grant interest beginning on May 26, 2018.

[8] Plaintiffs only seek interest through June 27, 2018, the date that they filed the present motion for default judgment against Defendant Adler. (Motion for Default Judgment [Docket Item 29]; Miller Dec. [Docket Item 29-3], ¶ 11.)

[9] Plaintiffs indicate that they have rounded their interest calculations to the nearest whole dollar. (See Miller Dec. [Docket Item 29-3], 5 n.1.)

5

entered default against Defendant on July 18, 2018.[10] Plaintiffs' motion for default judgment against Defendant Hirsch followed, to which Defendant has not filed a response.[11] (See Motion for Default Judgment [Docket Item 33].)

4. **Defendant Adler was Properly Served and is in Default.**
Plaintiffs assert that they initially made numerous attempts to personally serve Defendant Adler with the Complaint and summons, at her residence, 365 West 28th Street, Apartment 18B, New York,

---

[10] Defendant Hirsch sought, and received, an extension of time to file an Answer to the Complaint. (See Application for Extension of Time to Answer [Docket Item 3]; Clerk's Text Order, Oct. 13, 2017.) Defendant Hirsch subsequently filed a timely motion to dismiss the Complaint for lack of personal jurisdiction. (See Motion to Dismiss [Docket Item 4].) The Court denied this motion on June 29, 2018, making the deadline for Defendant Hirsch to file his answer to Plaintiff's Complaint July 13, 2018. (See Order [Docket Item 31]; FED. R. CIV. P. 12(a)(4)(A).) Defendant Hirsch's former attorney, Edwin Matthews, Esq., sought leave to withdraw as counsel for Defendant Hirsch, (see Motion to Withdraw [Docket Item 11]), which was granted on February 2, 2018. (See Order [Docket Item 17].) Hirsch has filed no answer to date and has been in default for more than three months. More recently there was an indication that Defendant Hirsch had contacted, but not retained, a New York attorney. (See n.11, infra.)

[11] On August 20, 2018, Attorney Joshua A. Bloomgarden filed a letter on the docket signed by Maurice W. Heller seeking an extension of time for Defendant Hirsch to file a brief in opposition to this motion, even though Mr. Hirsch had not yet retained them. (See Letter [Docket Item 34], Aug. 20, 2018.) The Court denied this request. (See Order [Docket Item 38].) Neither Mr. Bloomgarden nor Mr. Heller have made an appearance in this matter on behalf of Defendant Hirsch. Furthermore, it is doubtful that Mr. Heller is qualified to practice before this Court because he is not a member of its bar, and the Court notes that no motion for admission pro hac vice has been filed on his behalf. (See Order [Docket Item 38], Aug. 24, 2018, ¶ 8.)

6

NY 10001, as detailed in their Certification of Service. (See Certification of Service [Docket Item 18], ¶¶ 2-5.) Plaintiffs assert that their attempts at personal service were unsuccessful, though it appeared to their process server that Defendant Adler was at home during the attempted service and was refusing to answer the door. (See id.)

5. After the numerous failed attempts at personal service, Plaintiffs concluded that Defendant Adler was "actively evading service," and Plaintiffs therefore sought to serve Defendant Adler, pursuant to Federal Rule of Civil Procedure 4(e)(1), by utilizing the laws of the State of New Jersey (the state in which this Court is located) and of the State of New York (the state in which service was being made). (See id. at ¶¶ 7-8; FED. R. CIV. P. 4(e)(1).)

6. New Jersey law specifies that

> [i]f personal service cannot be effected after a reasonable and good faith attempt, . . . service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant . . . . If the addressee refuses to claim or accept delivery of registered or certified mail, service may be made by ordinary mail addressed to the defendant's usual place of abode. The party making service may, at the party's option, make service simultaneously by registered or certified mail and ordinary mail, and if the addressee refuses to claim or accept delivery of registered mail and if the ordinary mailing is

not returned, the simultaneous mailing shall
constitute effective service.

N.J. Ct. R. § 4:4-3(a). Plaintiffs allege that they effected service "by mailing a copy of the Summons, Verified Complaint, and Case Information Statement to Defendant [Adler] simultaneously by certified mail, return receipt requested, and ordinary mail to Defendant [Adler]'s residence at 365 West 28th Street, Apartment 18B, New York, New York 10001." (Certification of Service [Docket Item 18], ¶ 8.) It appears to the Court that Plaintiffs sent the certified and ordinary mail on November 22, 2018. (See Exhibit 3 [Docket Item 18], 21 on the docket.)

    7.   New York law specifies that where personal service of a defendant or service to a defendant's place of residence or place of business

> cannot be made with due diligence, [service
> may be made] by affixing the summons to the
> door of either the actual place of business,
> dwelling place or usual place of abode within
> the state of the person to be served and by
> either mailing the summons to such person at
> his or her last known residence or by mailing
> the summons by first class mail to the person
> to be served at his or her actual place of
> business . . . , such affixing and mailing to
> be effected within twenty days of each other;
> proof of such service shall be filed with the
> clerk of the court designated in the summons
> within twenty days of either such affixing or
> mailing, whichever is effected later; service
> shall be complete ten days after such
> filing . . . .

8

N.Y. C.P.L.R. 308(4) (McKinney 2018). Plaintiffs allege that, on March 29, 2018, their process server "affixed a copy of the Summons, Verified Complaint, and Case Information Statement to the door of Defendant's usual place of abode located at 365 West 28th Street, Apartment 18B, New York, New York 10001." (Certification of Service [Docket Item 18], ¶ 10(a).) Plaintiffs further allege that, "[o]n April 2, 2018, a copy of the Summons, Verified Complaint, and Case Information Statement was sent by first class mail to Defendant's last known address located at 365 West 28th Street, Apartment 18B, New York, New York 10001." (Id. at ¶ 10(b).) Proof of such service was filed on the docket in this case on April 12, 2018, in compliance with N.Y. C.P.L.R. 308(4). (See id.) Service was therefore considered complete under New York law on April 22, 2018. (See id.; N.Y. C.P.L.R. 308(4).)

8. Defendant Adler has not filed any response to Plaintiffs' Complaint, and the Clerk of Court accordingly entered default against Defendant Adler on May 17, 2018.[12] Plaintiffs' present motion for default judgment against

---

[12] The Court finds that the latest possible date to construe service to have been effected is on the date that service under New York law was finalized, i.e. ten days after Plaintiffs filed their Certificate of Service [Docket Item 18]. By that metric, the deadline for Defendant Adler to file an Answer or otherwise respond to Plaintiff's Complaint was May 3, 2018. See FED. R. CIV. P. 12(a).

9

Defendant Adler followed, to which Defendant has not filed a response. (See Motion for Default Judgment [Docket Item 29].)

9. **Standard for Entry of Default Judgment.** Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading. See FED. R. CIV. P. 55(b)(2); see also Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). A party seeking default judgment is not entitled to relief as a matter of right; the Court may enter default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, Case No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012) (internal quotations and citation omitted). Thus, before granting default judgment, a court must determine: (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a sufficient cause of action, and (3) whether the circumstances otherwise render the entry of default judgment "proper." Teamsters Health & Welfare Fund of Phila. v. Dubin Paper Co., No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted). A court must accept as true every "well-pled" factual allegation of the complaint, but no

presumption of truth applies to the plaintiff's legal conclusions or factual assertions concerning damages. <u>Comdyne I. Inc. v. Corbin</u>, 908 F.2d 1149 (3d Cir. 1990); 10 C. Right, A. Miller, & M. Kane, <u>Federal Practice and Procedure</u> (2d ed. 1983), § 2688, at 444. The Court addresses each element in turn.

10. **<u>Subject Matter Jurisdiction.</u>** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Although a breach of contract would normally be a state law cause of action, <u>see</u> <u>generally</u> <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375 (1994), this Court has previously stated that

> [t]o establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must show not only diversity of citizenship, but also that the amount in controversy exceeds $75,000 exclusive of interests and costs. 28 U.S.C. § 1332(a). "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." <u>Feuerstein v. Simpson</u>, 582 F. App'x 93, 98 (3d Cir. 2014) (quoting <u>St. Paul Mercury Indemnity v. Red Cab Co.</u>, 303 U.S. 283, 288–89 (1938)). This test requires only minimal scrutiny by the Court and the sole inquiry is whether the plaintiff can recover more than $75,000. <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578 (3d Cir. 1997). In other words, "[i]n diversity cases, [courts] generally accept a party's good faith allegation of the amount in controversy." <u>Columbia Gas Transmission Corp. v. Tarbuck</u>, 62 F.3d 538, 541 (3d Cir. 1995). Therefore, dismissal based on failure to satisfy the amount in controversy requirement is only

> warranted "if, from that face of the complaint, it is a 'legal certainty' that the plaintiff cannot recover $75,000, or if, from the proofs, it appears to a legal certainty that the plaintiff is not entitled to that amount." Dolin v. Asian Am. Accessories, Inc., 449 F. App'x 216, 218 (3d Cir. 2011). In cases initiated in federal court, as opposed to those removed from state court, "a defendant challenging the sufficiency of the plaintiff's amount in controversy (through a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure) is required to demonstrate, to a legal certainty, that the plaintiff cannot recovery an amount above the jurisdictional threshold." Heffner v. LifeStar Response of New Jersey, Inc., Civ. 13-00194, 2013 WL 5416164, at *6 (E.D. Pa. Sept. 27, 2013) (citing Onyiuke v. Cheap Tickets, Inc., 435 Fed. App'x 137, 139 (3d Cir. 2011)).

7-Eleven, Inc. v. Maia Inv. Co., No. 14-8006, 2015 WL 1802512, at *10 (D.N.J. Apr. 17, 2015).

11. In this case, Plaintiffs have alleged that Defendant Hirsch is a resident of Georgia, that Defendant Adler is a resident of New York, and that Plaintiffs are residents of New Jersey, (see Complaint [Docket Item 1], ¶¶ 8-10), thereby satisfying the diversity of citizenship requirement. Additionally, Plaintiffs are seeking a judgment against Defendant Adler in the amount of fifty-three thousand, seven hundred and sixty dollars ($53,760.00) and against Defendants Adler and Hirsch, jointly and severally, in the amount of two hundred and nineteen thousand, five hundred and thirty-four

dollars ($219,534.00), (see Miller Dec. [Docket Item 29-3], ¶¶ 11-12), thereby satisfying the amount in controversy requirement. Plaintiffs claims appear to be made in good faith, and there has been no evidence presented to contradict Plaintiffs' allegations regarding the parties' citizenship or the amount in controversy. Therefore, this Court has diversity jurisdiction over the present matter. See 7-Eleven, 2015 WL 1802512, at *10.

12. **Proof of Cause of Action – Breach of Contract.** The Court readily finds that Plaintiff has asserted and proved a valid cause of action for breach of contract with respect to both transactions. To make out a claim for breach of contract under New Jersey law, a plaintiff must allege that (1) there is a contract between the parties; (2) the contract was breached; (3) the breach caused damages; and (4) the party stating the claim performed its own contractual obligations. Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007) (citing Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002)). Here, Plaintiffs have alleged the existence of two contracts. (Complaint [Docket Item 1], ¶¶ 1-3.) Plaintiffs have alleged that Defendant Adler breached the terms of the first agreement by failing to repay Plaintiff Stephanie Segal Miller, despite her repeated requests, and that both Defendants breached the terms of the second agreement by

13

failing to repay Plaintiff Stephanie Segal Miller, despite her repeated requests. (Id. at ¶¶ 2-4.) Plaintiffs have sufficiently claimed and proved resulting harm from these breaches by Defendant Adler in the amount of fifty-three thousand, seven hundred and sixty dollars ($53,760.00) and by Defendants Adler and Hirsch, jointly and severally, in the amount of two hundred and nineteen thousand, five hundred and thirty-four dollars ($219,534.00). (See Miller Dec. [Docket Item 29-3], ¶¶ 11-12.) Therefore, with respect to both transactions, Plaintiffs have sufficiently demonstrated a cause of action for breach of contract to establish Defendants' liability for the purposes of this default judgment.

13. **Appropriateness of Default Judgment.** The Court must finally examine whether the entry of default judgment would be proper, taking into consideration whether the parties subject to default have a meritorious defense, the prejudice suffered by the parties seeking default, and the culpability of the parties subject to default. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).

14. In this case, other than Defendant Hirsch's unsuccessful assertion of lack of personal jurisdiction, Defendants have failed to proffer any defense to Plaintiffs' claims, and the Complaint itself reflects no fatal deficiency. See Hill v. Williamsport Police Dept., 69 Fed. App'x 49, 52 (3d

Cir. 2003) ("Because the defendants had not yet filed an answer, the District Court was unable to evaluate whether they had a litigable defense, [rendering this] factor . . . inconclusive."); Surdi v. Prudential Ins. Co. of Am., No. 08-225, 2008 WL 4280081, at *2 (D.N.J. Sept. 8, 2008) ("The facts as alleged in the Complaint provide no indication of a meritorious defense.").

15. Moreover, as Plaintiffs have no other means to recover damages from Defendants, Plaintiffs will be prejudiced in the absence of default judgment. See Joe Hand Promotions, Inc. v. Waldron, 2013 WL 1007398, at *4 (D.N.J. Mar. 13, 2013) (noting prejudice to plaintiff "because it has no alternative means of vindicating its claim against the defaulting parties."); Gowan v. Cont'l Airlines, Inc., No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (inability to "vindicate rights" absent a default judgment constitutes prejudice).

16. Lastly, the Court notes that, as described, supra, Defendant Hirsch was served on September 21, 2017. (See Proof of Service Summons [Docket Item 8].) Additionally, as explained, supra, Defendant Adler was served no later than April 22, 2018. (See Certification of Service [Docket Item 18], ¶ 10; N.Y. C.P.L.R. 308(4).) However, to date neither Defendant Hirsch nor Defendant Adler has answered Plaintiffs' claims, nor even entered an appearance in this case, other than the temporary

15

appearance of Mr. Matthews for Defendant Hirsch for purposes of filing the unsuccessful motion to dismiss for lack of personal jurisdiction. Defendants may be presumed culpable for their inaction. See Lee v. A to Z Trading LLC, No. 12-4624, 2014 WL 7339195, at *3 (D.N.J. Dec. 23, 2014) (finding the defendant's failure to respond despite awareness of the litigation "due to culpable conduct"); Teamsters Health & Welfare Fund, 2012 WL 3018062, at *4 ("Defendant's failure to answer demonstrates Defendant's culpability in its default"); Slover v. Live Universe, Inc., No. 08-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) (Defendant is presumed culpable where it has failed to answer, move, or otherwise respond). On balance, these factors weigh in Plaintiffs' favor, and the Court will accordingly grant default judgment. See Joe Hand Promotions, Inc., 2013 WL 1007398, at *4 (finding that factors weigh in favor of default where there was no indication of a cognizable defense to plaintiffs' claims, plaintiff had no alternative means of seeking damages, and defendants failed entirely to respond). Upon the evidence submitted, Plaintiffs have proved Defendants are liable as alleged.

17. **Damages.** The Court turns now to the question of damages. In considering the amount of damages, where a plaintiff seeks damages in a sum certain, the Court may rely upon detailed affidavits, without resorting to a hearing. Durant v. Husband,

28 F.3d 12, 15 (3d Cir. 1994); Golia v. IBCS Group, Inc., Case No. 14-2577, 2015 WL 1914652, at *4 (D.N.J. April 27, 2015). Plaintiffs seek a sum certain, as described, supra, for the amount that they conveyed to Defendants plus the interest agreed upon in each respective contract. (Complaint [Docket Item 1], ¶¶ 1-3.) Plaintiffs maintain that Defendant Adler is individually liable in the amount of fifty-three thousand, seven hundred and sixty dollars ($53,760.00) and that Defendants Adler and Hirsch are jointly and severally liable in the amount of two hundred and nineteen thousand, five hundred and thirty-four dollars ($219,534.00). (See Miller Dec. [Docket Item 29-3], ¶¶ 11-12.) The Court agrees that Plaintiffs have proved their claims. Therefore, the Court will award Plaintiffs fifty-three thousand, seven hundred and sixty dollars ($53,760.00) in contract damages and interest from Defendant Adler individually and two hundred and nineteen thousand, five hundred and thirty-four dollars ($219,534.00) in contract damages and interest from Defendants Adler and Hirsch, jointly and severally, in relation to Counts 1 and 2 of the Complaint.

18. **Costs and Attorneys' Fees.** Finally, Plaintiffs seek costs and attorneys' fees in relation to this matter. (See Complaint [Docket Item 1], ¶¶ 32, 37.) Neither of the agreements pertaining to the present case appear to provide for the recovery of attorneys' fees or costs in the event of litigation

17

arising from the agreements. (See Exhibit A [Docket Item 1], 16 on the docket; Exhibit B [Docket Item 1], 18 on the docket; Exhibit D [Docket Item 1], 23-26 on the docket; Exhibit E [Docket Item 1], 28-31 on the docket.) Nor have Plaintiffs directed the Court's attention to any statutory basis for their recovery of attorneys' fees and/or costs in this case. (See generally Motions for Default Judgment [Docket Item 29 & 33].) As such, the Court does not see any basis for granting Plaintiffs' request for the recovery of attorneys' fees or costs related to this case and Plaintiffs' request for such shall be denied without prejudice. However, Plaintiffs are the prevailing parties in this case, and therefore, consistent with Federal Rule of Civil Procedure 54(d)(2), Plaintiffs may apply for attorneys' fees and costs within fourteen (14) days of entry of the accompanying Default Judgment and a brief outlining the legal basis for Plaintiffs' recovery of attorneys' fees. Any motion for attorneys' fees must include an affidavit of costs and fees in the format required by Local Civil Rules 54.2(a) & (b). In addition to enumerating all such services for which reimbursement of attorneys' fees is sought, Plaintiffs are also requested to categorize such services so that a proper apportionment of fees can be made among Defendants, namely by also listing: (a) the services exclusively necessary for pursuing claims against Defendant Adler; (b) the services

exclusively necessary for pursuing claims against Defendant Hirsch; and (c) the services necessary for pursuing claims jointly against Defendants Adler and Hirsch which cannot fairly be apportioned between them.

19. For the reasons stated above, the Court will grant Plaintiffs' motion for default judgment in part, deny it without prejudice in part, and dismiss it without prejudice in part. The Court will enter Default Judgment against Defendant Adler individually in the amount of fifty-three thousand, seven hundred and sixty dollars ($53,760.00) and against Defendants Adler and Hirsch, jointly and severally, in the amount of two hundred and nineteen thousand, five hundred and thirty-four dollars ($219,534.00), with respect to Counts 1 & 2 of the Complaint. The Court will deny Plaintiffs' request for attorneys' fees and litigation costs without prejudice to Plaintiffs' right to make a renewed motion for attorneys' fees and costs consistent with Local Civil Rules 54.2(a) & (b) and the directives above. The Court will dismiss Plaintiffs' request regarding Counts 3 & 4 of the Complaint without prejudice.

20. An accompanying Order for Default Judgment will be entered.

**October 29, 2018**             **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            U.S. District Judge